## Carter H. Harrison, Mayor, et al., v. The People of the State of Illinois, ex rel. Samuel Goldman.

### Gen. No. 11.983.

1. RESIDENCE PURPOSES—*what constitutes use of building for.* In this case, wherein the question as to the right to maintain a junk shop in a particular locality was involved, evidence with respect to various buildings was considered and the question as to whether such buildings were used exclusively for residence purposes was determined, with regard to such buildings, respectively.

*Mandamus* proceeding. Appeal from the Superior Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed, with finding of facts. Opinion filed November 14, 1905.

Statement by the Court. This is an appeal by the respondents from a judgment awarding a writ of *mandamus* commanding the respondent Harrison, as mayor of Chicago, and the respondent the city of Chicago to issue to the relator a license to keep a junk shop at 152 Cleveland avenue in Chicago. The cause was submitted to the court by stipulation. The petition avers that relator applied for such license and his application was denied; that there then was in force an ordinance requiring such license, which is set out; that the following section of another ordinance was then in force:

" It shall not be lawful for any person, firm or corporation, to locate, build, construct or maintain on any street or alley in the city of Chicago, in any block in which two-thirds ($\frac{2}{3}$) of the buildings on both sides of the street are used exclusively for residence purposes, any building for a boarding, livery or sale stable, gas reservoir, blacksmith shop, foundry, packing house, rendering plant, soap factory, tannery, brewery or distillery, grain elevators, junk shops, or laundry, to be run by machinery without the written consent of a majority of the property owners, according to frontage, on both sides of such street or alley.

Such written consent shall be obtained and filed with the Commissioner of Buildings before a permit is issued for the construction or keeping of such building.

Provided, that in determining whether two-thirds ($\frac{2}{3}$) of the buildings on both sides of the street are used exclusively for residence purposes any building fronting upon another street and located upon a corner lot shall not be considered;"

that the block in which 152 Cleveland avenue is situated is one in which more than one-third of the buildings on both sides of the street are used for business purposes; and that two-thirds of the buildings are not used exclusively for residence purposes. There was an answer and replication thereto. The only issue raised by the pleadings is whether two-thirds of the buildings on both sides of the street in said block were used exclusively for business purposes.

The street in question runs north from Black Hawk street to North avenue. In the block, lots 1 to 19 front east and lots 31 to 49 front west on Cleveland avenue; lot

20 is at the southwest corner and lot 30 at the southeast corner of Cleveland and North avenues.

William D. Barge, for appellants; Edgar Bronson Tolman, Corporation Counsel, of counsel.

Elijah N. Zoline, for appellee.

Mr. Justice Baker delivered the opinion of the court.

On the north end of lot 20 is a building fronting on North avenue; on the south end of the lot is a building fronting east on Cleveland avenue. On the north end of lot 30 is a building fronting north on North avenue and on the south end of the lot is a building fronting west on Cleveland avenue. The two buildings fronting on Cleveland avenue on the south end of lots 20 and 30 must, we think, be included in arriving at the number of buildings in the block on both sides of Cleveland avenue. They were so included by the trial court, and both were held, and we think properly, to be buildings " not used exclusively for residence purposes."

At the time the application for the license was made the number of buildings fronting on Cleveland avenue on lots 1 to 19 and 31 to 49, was thirty-four. Adding to this number the buildings on the south ends of lots 20 and 30, and we have thirty-six as the number of buildings in the block " on both sides of the street," under the provisions of the ordinance. To entitle the relator to a judgment for the writ, the evidence must show that at least thirteen of said thirty-six buildings were not used " exclusively for residence purposes," for if twelve or less were not so used and twenty-four or more were so used, two-thirds of the buildings in the block on both sides of the street were used "exclusively for residence purposes," and under the provisions of the ordinance, the relator was not entitled to the license without the consent of a majority of the property owners, and there is no claim that such consent was obtained. The contention of appellee is that the evidence shows that sixteen of said thirty-six buildings were not used exclusively for residence purposes.

Among the buildings as to which such contention is made are the following:

### 1.   BUILDING ON LOT 2.

This is a three-story building, the first floor of which was occupied by Dr. Roberg as a residence,·and in one of the front windows was his doctor's sign.   Dr. Roberg testified that his office was at 1562 North Halsted street; that he had no office at his house; that he did not and had not for some time attended to patients at his house, and there was no evidence to the contrary.   We do not think that upon this evidence the building in question can be included among the buildings not used exclusively for residence purposes.

### 2.   BUILDING ON LOT 4.

The evidence tended to show that in the residence building on lot 4 a carpenter lived, but there was no evidence even tending to show that he carried on his trade or business in such building, and this building must be excluded.

### 3.   BUILDING ON LOT 42.

The evidence fails to show that the business of dressmaking was carried on in the building on this lot, and the record shows that on the trial the court stated that said building would not be included as one not used exclusively for residence purposes, and that counsel for relator then said that no claim was made by relator as to said building. The building on lot 42 will be excluded.

### 4.   THE BUILDING ON LOT 46.

The evidence shows that the building on lot 46 was occupied as a residence by Piper, a carpenter, but wholly fails to show that any part of the building was used by him as a shop, or that business of any kind was carried on in said building, and it must therefore be excluded.

### 5.   THE BUILDING ON LOT 48.

The evidence shows that the building on this lot was occupied as a residence by E. Johnson, who was engaged in the teaming business, but does not even tend to show

that any part of said building was used for business pur-
poses.   Johnson testified that he had no office in his house;
that he kept his horses and wagons in a barn on Hudson
avenue; that he did not do any business in his house.
Relator's counsel on the trial stated that he would not
insist that this building should be included, and it will be
excluded.

The evidence, in our opinion, fails to show that any one
of the five buildings above mentioned was not used ex-
clusively for residence purposes, and does show that, at
most, but eleven of the thirty-six buildings on both sides
of the street in the block in question were used in whole or
in part for other than residence purposes, and that at least
twenty-five of said buildings were used exclusively for resi-
dence purposes.

There is no evidence to support the finding of the court,
implied from the judgment, that two-thirds of the buildings
in said block on both sides of the street were not used
exclusively for residence purposes, and the judgment of the
Superior Court will therefore be reversed with a finding of
facts and the cause will not be remanded.

*Reversed.*